UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| **JOSEPH E. POSEY, SR.,** ) | |
|               **Plaintiff,** ) | |
|    v.                         ) | |
|                             ) | Case No. 06-2114 |
| **CHAMPAIGN PARK DISTRICT,** ) | |
|               **Defendant.** ) | |

# O R D E R

In June 2006, Plaintiff Joseph E. Posey, Sr., acting *pro se*, filed his Complaint (#1) against Defendant Champaign Park District (hereinafter "CPD"), alleging a violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e-5). Federal jurisdiction is based on federal question (26 U.S.C. § 1332).

In April 2007, Defendant filed a Motion for Summary Judgment (#16). After reviewing Defendant's motion and the parties' memoranda, this Court **GRANTS** Defendant's Motion for Summary Judgment **(#16)**.

## I. Background

The undisputed facts are as follows: Plaintiff is an African American. (Posey dep., #17-6, p. 8.) He worked for the CPD as a member of the trash collection crew from July 2001 to August 2004. (Posey dep., #17-6, p. 6.) The CPD is a local governmental unit charged with providing recreation opportunities to the public. (McGrew aff., #17-3, p. 2.) The trash collection crew is responsible for "ensuring the effective maintenance and appearance of the Park District parks by performing litter pickup and custodial care." (#17-3, p. 2.)

On August 24, 2004, Plaintiff began his shift at 7:30 a.m. with colleague Clinton Andrews, also African American. (#17-6, pp. 6, 8.) At 8:30 that morning, the CPD received a phone call from a woman who said that she saw an individual wearing a CPD uniform purchase alcohol at the Circle K convenience store about two blocks from the facilities where Plaintiff and Andrews were scheduled to work. (#17-3, pp. 2-3.) Plaintiff was then radioed to

come in and meet David Schneider, Maintenance Supervisor and acting department head; Mary McGrew, CPD's Human Resources Manager; and Dennis Shiley, Plaintiff's supervisor. (#17-3, p. 3.) At this meeting, Ms. McGrew asked Plaintiff if he had stopped his CPD truck at Circle K that morning. (#17-6, p. 8.) Plaintiff admitted this, saying that he went there to use the restroom and buy a newspaper. (#17-6, p. 8.) Plaintiff denied several times that he had purchased alcohol, and then, upon being questioned further, he admitted it. (#17-6, p. 7). He told Ms. McGrew that he had been approached by someone outside the store who gave him money to buy alcohol. (#17-6, p. 7.)

When Plaintiff began working for the CPD, he received a copy of the CPD's Safety Policy and Rules and he received training on CPD policies and vehicle use. (#17-6, p. 11.) CPD's policies require that "employees act and conduct themselves in the best interest of the Park District" (#17-9, p. 2), not possess alcohol while acting on behalf of the CPD (#17-12, p. 2), and not leave the job during work hours without permission (#17-13, p. 3). The policy manual also notes that an employee may be dismissed for violating any of these policies or in any instance where it is in the best interest of the CPD to do so. (#17-13, pp. 2-3.)

Plaintiff was terminated by the CPD on August 24, 2004, purportedly for a violation of the aforementioned policies. (#17-14, p. 2.) On August 24, 2005, David Schneider wrote a letter to Plaintiff stating as follows:

> At 10 a.m. today with Dennis Shiley, Mary McGrew, and myself as witnesses you admitted that you stopped at the Circle K . . . at approximately 8:30 a.m. to buy a Chicago Tribune. You admit you were approached outside the store by an acquaintance that was "barred out" from the store. The acquaintance gave you some money to purchase alcohol for him. You agree that you purchased the alcohol and gave it directly [*(sic)*] the person as you left the store. You do not deny that you were in District uniform, on District time, and driving a District vehicle when this incident occurred.
>
> Your actions put you in direct violation of District policy. . . . Therefore, effective today, your employment with the District is terminated.

(#2-2, p. 4.)

In January 2005, the CPD terminated Bill Staley, who is white, for failing to perform his job properly and casting the CPD in a negative light.  (#17-3, p. 5.)  Staley had displayed negative attitude towards his coworkers and the public.  (#17-3, p. 5.)

Plaintiff filed a complaint before the Equal Employment Opportunities Commission (EEOC) in March 2006.  He subsequently filed a complaint in this Court in June 2006 alleging that he was terminated because of his race.  In April 2007, Defendant filed a Motion for Summary Judgment (#16).  In May 2007, Plaintiff filed a Motion for Summary Judgment (#20).  Defendant then moved to strike Plaintiff's motion because it was filed after the deadline for dispositive motions.  (*See* Defendant CPD's Motion To Strike Plaintiff's Motion for Summary Judgment, #22.)  In July 2007, the Court granted the motion to strike, noting that, despite its title, it appeared that Plaintiff intended the document he titled a motion to be a response to Defendant's motion for summary judgment, and that the Court would treat it as a such a response.  (*See* Order, #30.)

## II.  Standard of Review

The Court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In ruling on a motion for summary judgment, the Court must decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial.  *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).  The party seeking summary judgment bears the initial burden of showing that no such issue of material fact exists.  *Celotex*, 477 U.S. at 323.

The Court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  However, the nonmoving party may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather, he must go beyond the pleadings and support his contentions

3

with proper documentary evidence. *Celotex*, 477 U.S. at 322-23. A scintilla of evidence in support of the nonmovant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986). The plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id*. "In such a situation there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*.

### III.  Analysis

Plaintiff alleges that he was terminated because of his race and he seeks a remedy under Title VII of the Civil Rights Act of 1964. Title VII prohibits an employer from "discharg[ing] any individual, or otherwise [] discriminat[ing] against any individual . . . because of such individual's race." 42 U.S.C. § 2000e-2(a)(1).

There are two methods for avoiding summary judgment in an employment discrimination case: the "direct" method of proof, which requires direct or circumstantial evidence of discriminatory intent, and the "indirect" burden-shifting method. *Jordan v. City of Gary*, 396 F.3d 825, 832 (7th Cir. 2005); *McDonnell Douglas Corp. v. Green*, 441 U.S. 792, 802 (1973).

### A.  Direct Method

To prove discrimination using the direct method of proof "essentially requires an admission by the decision-maker that his actions were based on the prohibited animus." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000). Such admissions rarely occur. *Id*. Therefore a plaintiff may also defeat summary judgment under the direct method of proof by constructing a "convincing mosaic" of circumstantial evidence that "allows a jury to infer intentional discrimination by the decision-maker." *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (quoting *Troupe v. May Dep't Store Co.*, 20 F.3d 734, 737 (7th Cir. 1994)). Circumstantial evidence may come in the form of "suspicious timing, ambiguous statements oral

4

or written, [or] behavior toward or comments directed at other employees in the protected group." *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 272-73 (7th Cir. 2004) (quoting *Troupe*, 20 F.3d at 736). Nevertheless, even circumstantial evidence must point directly to a discriminatory reason for the employer's action. *Adams v. Wal-Mart Stores, Inc*, 324 F.3d 935, 939 (7th Cir. 2003); *Chiaramonte v. Fashion Bed Group, Inc., a div. of Leggett & Platt, Inc.*, 129 F.3d 391, 396 (7th Cir. 1997) (under the direct method, the plaintiff must produce evidence that relates to the motivation of the decision-maker responsible for the contested decision).

In the instant case, Plaintiff offers no evidence that would allow a jury to infer intentional discrimination under the direct method. First, Plaintiff has not provided any direct evidence of a discriminatory intent on the part of the CPD. Second, Plaintiff has not offered any circumstantial evidence in the form of suspicious timing, ambiguous statements, or behavior toward or comments directed at other employees in the protected group. *See Dandy*, 388 F.3d at 272-73. Plaintiff has not provided evidence of any past interactions or relevant behavior that indicates any sort of racial animus on the part of the CPD. The evidence shows that Plaintiff was terminated promptly after the incident that was the purported basis for the termination. Thus, Plaintiff has failed to establish discrimination under the direct method of proof.

### B. Indirect Method

To establish a prima facie case of race discrimination in employment using the indirect method, a plaintiff must show the following: (1) he is a member of a protected class; (2) his performance met the defendant's legitimate expectations; (3) he suffered an adverse employment action; and (4) the defendant treated other similarly-situated persons outside of the plaintiff's classification more favorably. *McDonnell Douglas*, 441 U.S. at 802. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged action. *Id.* Once the defendant does so, the burden of production shifts back to the plaintiff to prove by a preponderance of the evidence that the reason proffered by the defendant is actually a pretext for discrimination. *Id.*

As an African-American, Plaintiff is a member of protected class. Plaintiff suffered an adverse employment action—his employment was terminated. At issue is whether Plaintiff met the CPD's legitimate performance expectations and whether the CPD treated other similarly-situated persons more favorably.

### 1. Legitimate expectations

The CPD first contends that Plaintiff has not shown that he met his employer's legitimate expectations. *See Plair v. E.J Brach & Sons, Inc.*, 105 F.3d 343, 347 (7th Cir. 1997) (stating that the plaintiff bears the burden of showing that he met his employer's legitimate job expectations); *e.g.*, *Villa v. City of Chi.*, 924 F.2d 629, 631 (7th Cir. 1991) (holding that a plaintiff failed to affirmatively show that he met his employer's job expectations, particularly where the defendant produced even minimal evidence to the contrary).

Here, the CPD's Personnel Manual prohibits (1) leaving the job while on duty, (2) possession of alcohol while on duty, and (3) tarnishing the positive image of the CPD. The record contains evidence indicating Plaintiff has violated all three policies. It is undisputed that Plaintiff was at the Circle K at 8:30 a.m., far in advance of his 10:00 break. Plaintiff testified that he went there to use the restroom and buy a newspaper (#17-6, p. 6), but Plaintiff does not dispute that he violated the policy about leaving work while on duty. Whether Plaintiff violated the second and third policies is arguably in dispute because Plaintiff stated in his deposition that he did not purchase alcohol despite his earlier admission that he did so and despite his allegations in his complaint that he purchased alcohol at the request of someone outside the store and gave it to the person as he left the store. Nevertheless, notwithstanding any factual dispute regarding Plaintiff's conduct on August 24, 2000, Plaintiff has failed to present any evidence that he consistently met the CPD's job expectations. The absence of evidence of violations does not constitute evidence that Plaintiff was meeting his employer's expectations. Plaintiff bears the burden of producing *some* evidence that he was meeting the CPD's legitimate expectations. *Johnson v. Zema Sys. Corp.* 170 F.3d 734, 743 (7th Cir. 1999). As a result, based on the evidence before the Court, no reasonable jury could find that Plaintiff had met his job expectations.

## 2. Favorable Treatment of Similarly-Situated Employees

The CPD next argue that Plaintiff has failed to establish that a similarly-situated park worker outside of his protected class was treated more favorably, another essential element of the prima facie case.

Plaintiff has not presented any evidence, or even a statement, to indicate that similarly-situated employees have been treated more favorably. Moreover, the CPD has presented evidence that it terminated a white employee for the same reason it purportedly terminated Plaintiff, that is, failure to comply with the CPD's job expectations and failure to conduct himself in the best interests of the CPD. Plaintiff has not only presented no evidence on this element, but he has not been able to refute Defendant's contrary evidence. Thus, he has not established that the CPD treated workers outside of his protected class more favorably than it treated him.

"The failure to establish any one of the initial four elements defeats a discrimination claim." *Bio v. Fed'l Express Corp.*, 424 F.3d 593, 596 (7th Cir. 2005). Based on Plaintiff's failure to meet these two essential elements, the Court concludes that Plaintiff failed to establish a prima facie case under the indirect method of proof.

## 3. Nondiscriminatory Reasons and Pretext

Although not necessary to its decision, the Court will also consider the issue of pretext. *See DeLuca v. Winer Indus., Inc.*, 53 F.3d 793, 798 (7th Cir. 1995) ("[F]ailure to establish the prima facie case makes it unnecessary for us to discuss [defendant's] reasons for terminating him or the issue of pretext."). The CPD contends that even if Plaintiff had established a prima facie case of discrimination using the indirect method, the CPD has still established a legitimate nondiscriminatory reason for the adverse action.

On August 24, 2004, David Schneider wrote Plaintiff a letter of termination stating that Plaintiff's employment had been terminated because he violated the CPD's policies. Consistent with this letter, Ms. McGrew testified in her affidavit that the CPD terminated Plaintiff because

7

his "conduct . . . violated the [Park District's] policies and rules and . . . hurt the Park District's image in the eyes of the public." (#17-3, p. 4.) This constitutes a legitimate nondiscriminatory reason for the termination.

A plaintiff may overcome a showing of a nondiscriminatory reason by showing it to be pretext, that is, either that the employer was more likely motivated by a discriminatory reason or the explanation is unworthy of credence. *Robinson v. PPG Indus., Inc.*, 23 F.3d 1159, 1163 (7th Cir. 1994) (quoting *La Montagne v. Am. Convenience Prod., Inc.,* 750 F.2d 1405, 1409 (7th Cir. 1984)). Specifically, the plaintiff must demonstrate not that the employer made a mistake but rather that its proffered reason is a cover-up and "not the real reason at all." *Koski v. Standex Int'l Corp.*, 307 F.3d 672, 677 (7th Cir. 2002).

In the instant case, Plaintiff has not shown that the CPD's proffered nondiscriminatory reasons were pretextual. Plaintiff makes two arguments pertaining to this issue. First, based on his deposition testimony, Plaintiff seems to imply that, despite his admission to McGrew, he never actually purchased the alcohol. At this point, it does not matter whether Plaintiff did in fact purchase alcohol. Even if he did not, it is enough that Schneider, Shiley, and McGrew apparently believed it and that such conduct constituted valid grounds for dismissal. The record contains evidence supporting their belief, including the phone call received from the woman who reported she saw a CPD employee buying alcohol at the Circle K store, Plaintiff's admission that he was at the Circle K, and Plaintiff's statement at the time of initial questioning that he had purchased alcohol for someone outside the store who gave him money to buy the alcohol. (#17-6, p. 7). Furthermore, Plaintiff has not presented any evidence that McGrew, Schneider, or Shiley lied about their belief that Plaintiff purchased alcohol. Thus, Plaintiff has not shown that the CPD's proffered reason is unworthy of credence.

Plaintiff also states that he was "coerce[d] into admitting that he purchased the alcohol after Plaintiff was assured that he would not be terminated if his urine test was negative for alcohol." (#21, p. 1.) He contends that McGrew "coerced" him into admitting that he purchased the alcohol apparently based on his deposition testimony that she asked him several times

8

whether he had purchased alcohol before he finally admitted it. The following colloquy occurred at his deposition:

> P: After she kept asking me over and over, and she didn't believe me. I told her, Go for it. I told her, Yeah. She didn't believe me the first time. I told her three times. She didn't believe me. She kept asking me. She wanted to act stupid. I told her, I bought it. If I got alcohol in my system. What happens? Do I lose my job or do I stay here? She said, You will stay here. And I told her, Take me to the hospital [for the urine test].
> . . . .
> Q: You did tell Mary McGrew that you did buy alcohol in the store, true?
> P: After she kept asking me several times and I gave her the answer no. And she would not take the answer no. So I told her yes.
> . . . .
> Q: Did you also tell her that you had been approached by someone outside the store who gave you money to buy alcohol?
> P: Yes, I did tell her that.

(#17-6, pp. 6-7.) Later during his deposition, Plaintiff testified that "[s]he asked me about three or four times then she said, Well, if you like, we can go to the store, and you know, get the tape and get the information from the store." (#17-6, p. 11.) Finally, Plaintiff testified that McGrew did not like him because she had once mentioned to him that he was speeding in the park, which he denied doing. (#17-6, pp. 10-11.)

This testimony is not sufficient to suggest that the CPD's proffered reason was "not the reason at all" or that the decision to terminate was prompted by any sort of racial animus. *See Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1183 (7th Cir. 2002) (stating that "an employer would be entitled to judgment as a matter of law . . . if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred") (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)). The Court notes that the CPD did not terminate his employment because he *drank* alcohol, but because he *purchased* alcohol in violation of CPD policy. Therefore, the fact that the urine test showed that he had not had any alcohol to drink is not relevant. In addition, the fact that the CPD fired Plaintiff in spite of

9

Ms. McGrew's promise that he would not lose his job if the urine test was negative for alcohol does not suggest that the CPD's proffered reason for firing him, that is, for purchasing alcohol while on duty, was not true or that he was fired because of race. The Court will not assume the role of a "super personnel department." *Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 648 (7th Cir. 2006). The evidence Plaintiff has presented does not suggest that CPD's proffered reason was a pretext for discrimination.

Here, Plaintiff has failed to satisfy two necessary elements of the prima facie case and to raise a dispute as to pretext. In the absence of any disputes of material fact, Defendant CPD is entitled to judgment as a matter of law.

### IV. Summary

For the reasons stated above, the Court **GRANTS** Defendant's Motion for Summary Judgment **(#16)**. The Clerk of the Court is directed to enter judgment against Plaintiff and in favor of Defendant. This case is terminated.

ENTER this 17th day of August, 2007.

s/ DAVID G. BERNTHAL<br>U.S. MAGISTRATE JUDGE